UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHANE D. BORTNER, | ) | CASE NO. 3:08 CV 02615 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| ED SHELDON, WARDEN, | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| Defendant. | ) | |

Shane D. Bortner ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. # 1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Allen County, Ohio Court of Common Pleas conviction for three counts of Sexual Battery in violation of Ohio Revised Code ("O.R.C.") § 2907.03(A)(3).  ECF Dkt. # 1.  On March 16, 2009, Respondent Edward Sheldon ("Respondent") filed an answer.  ECF Dkt. # 6.  On May 28, 2009, Petitioner filed a reply to Respondent's Return of Writ.  ECF Dkt. # 10.  The case was referred to the undersigned for a Report and Recommendation.  ECF Dkt. # 3.  For the following reasons, the undersigned RECOMMENDS that this Court **DISMISS** the instant petition in its entirety with prejudice.

## I.     SYNOPSIS OF THE FACTS

The Third District Court of Appeals set forth the facts of this case in an order affirming the trial court's denial of a petition for postconviction relief.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61

(6thCir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999); see also *Rault v. State of La.*, 772 F.2d 117, 131

(5th Cir. 1985); *Cook v. Florida Parole and Probation Com'n*, 749 F.2d 678, 680 (11th Cir. 1985).

As set forth by the Third District Court of Appeals, the facts are:

> {¶ 1} Defendant-Appellant Shane D. Bortner ("Bortner") appeals from the October 17, 2007 Judgment Entry of the Court of Common Pleas, Allen County, Ohio denying his Petition for Post-Conviction Relief.

> {¶ 2} This Petition stems from Bortner's plea of no contest to three counts of Sexual Battery in violation of R.C. 2907.03(A)(3), felonies of the third degree. Bortner was found guilty and sentenced to three-year prison terms for each count of Sexual Battery, to be served consecutively, for a total of nine years in prison. Bortner was also classified as a sexual oriented offender.

> {¶ 3} Bortner's appellate counsel filed a brief in his direct appeal pursuant to Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 on May 9, 2007. Appellant was granted numerous extensions of time before filing a brief on July 30, 2007 challenging the sentence imposed by the trial court. On November 16, 2007 this Court dismissed Bortner's direct appeal. State v. Bortner, 3rd Dist. No. 1-07-13.

> {¶ 4} On October 17, 2007 Bortner filed a Petition for Post-Conviction Relief. On the same day, the trial court denied the Petition.

> {¶ 5} Bortner now appeals, asserting five assignments of error.

ECF Dkt. # 6, Ex. 16; *State v. Bortner*, No. 1-07-75, 2008 WL 1700413, at *1 (Ohio App. 3d Dist.

April 14, 2008), unreported.

## II.    PROCEDURAL HISTORY

### A.    State Trial Court

On September 14, 2006, the Warren County prosecuting attorney filed an indictment

charging Petitioner with five counts of sexual battery in violation of Ohio Revised Code

§2907.03(A)(3).  ECF Dkt. # 6, Ex.1.  On December 29, 2006, Petitioner appeared before the trial

court and entered a negotiated plea of no contest to three counts of sexual battery.  ECF Dkt. #6,

Ex. 2.  On February 13, 2007, the trial court found Petitioner guilty and sentenced him to

consecutive three-year terms of incarceration for each count of sexual battery, for a total sentence

of nine years. *Id.*

### B.    Direct Appeal

On February 26, 2007, Petitioner filed a notice of appeal in the Third District Court of

Appeals.  ECF Dkt. #6, Ex. 6.  On May 9, 2007, counsel for Petitioner filed a motion to withdraw

-2-

from representation.  ECF Dkt. #6, Ex. 7.  Counsel also included a brief on the merits of the appeal in the event that the court would deny the motion to withdraw.  *Id.*  The brief raised the following assignments of error:

> I.   The trial court erred in not sentencing the Defendant to the minimum sentence and in not running the sentences concurrently.
>
> II.  The rule of lenity requires the imposition of the minimum and concurrent sentences, and the trial court erred in not sentencing the defendant in this way.
>
> III. The trial court's sentence was an abuse of discretion.

*Id.*

On July 30, 2007, Petitioner, *pro se*, filed an additional merits brief raising the following assignment of error:

> I.   The sentencing court abused it's [sic] discretion during the sentencing proceedings.

ECF Dkt. #6, Ex. 8.  On November 16, 2007, the Court of Appeals granted the motion to withdraw as counsel, affirmed the judgment of the trial court, and dismissed the appeal.  ECF Dkt. # 6, Ex. 9.  Petitioner did not appeal to the Supreme Court of Ohio.

### C.    Post-Conviction Petition

On October 17, 2007, Petitioner filed a petition for post-conviction relief in the Allen County Common Pleas Court.  ECF Dkt. # 6, Ex. 10.  Petitioner raised the following three grounds for relief:

> 1.   The petitioners [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I sub section 10 of the Ohio constitution were violated when counsel failed to move the court to suppress evidence obtained in violation of petitioners [sic] rights prohibiting warrantless searches guaranteed by the Fourth Amendment [sic] to the United States Constitution and Article I sub section 14 of the Ohio constitution.
>
> 2.   The petitioners [sic] rights to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I sub section 10 of the Ohio Constitution were violated when  counsel failed to move the court to suppress evidence that was suppressable [sic] due to an illegal warrantless search that violated petitioners [sic] rights guaranteed by the Fourth Amendment to the

United States Constitution and Article I sub section 14 of the Ohio constitution.

3.  The petitioners [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I sub section 10 of the Ohio Constitution were violated when counsel failed to properly represent petitioner due to a conflict of interest.

*Id*.  On the same day, the trial court dismissed Petitioner's petition as untimely, and, alternatively, as barred by *res judicata*.  ECF Dkt. #6, Ex. 11.

On November 2, 2007, Petitioner, *pro se*, filed a notice of appeal from the trial court's denial of his post-conviction petition.  ECF Dkt. #6, Ex. 12.  Petitioner raised the following assignments of error in his supporting brief:

I.  The appellants [sic] petition for post-conviction relief was erroneously dismissed due to it being untimely when the delay in filing said petition was the result of the inactions of an officer of the court or appellants [sic] previous appellate counsel.

II.  The trial court erred in applying the doctrine of res judicata to the appellants [sic] post conviction petition due to the evidence supporting said petition not being on the record.

III.  The appellant [sic]s right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I §10 of the Ohio constitution were violated when counsel failed to move the court to suppress evidence obtained in violation of appellant's rights prohibiting warrantless searches guaranteed by the Fourth Amendment to the United States Constitution and Article I, §14 of the Ohio constitution.

IV.  The appellants [sic] rights to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 10 of the Ohio constitution were violated when counsel failed to move the court to suppress evidence that was suppressible due to the evidence being obtained through evidence that was obtained by an illegal warrantless search that violated appellants [sic] rights guaranteed by the Fourth Amendment to the United States Constitution and Article I § 14 of the Ohio constitution.

V.  The appellants [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I § 10 of the Ohio constitution were violated when counsel failed to properly represent appellant due to conflict of interest.

ECF Dkt. #6, Ex. 13.  On April 14, 2008, the Court of Appeals affirmed the trial court's judgment.  ECF Dkt. #6, Ex. 16.

On May 16, 2008, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF

Dkt. #6, Ex. 17.  Petitioner filed a memorandum in support of jurisdiction raising the following

propositions of law:

1.  The appellant's petition for post conviction relief was erroneously dismissed due to it being untimely when the delay in filing petition was the result of the inactions of an officer of the court of appellant's previous appellate counsel.

2.  The doctrine of res judicata was erroneously applied to appellant's claim due to the evidence supporting the claims not being on the record.

3.  The appellant's right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I § 10 of the Ohio Constitution were violated when counsel failed to move the court to suppress evidence obtained in violation of appellant's rights prohibiting warrantless searches guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 14 of the Ohio Constitution.

4.  The appellant's right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I § 10 of the Ohio Constitution were violated when counsel failed to move the court to suppress evidence that was suppressible due to the evidence being obtained through evidence that was obtained by an illegal warrantless search that violated appellant's right guaranteed by the Fourth Amendment to the United States Constitution and Article 1 § 14 of the Ohio Constitution.

5.  The appellant's right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I § 10 of the Ohio Constitution were violated when counsel failed to properly represent appellant due to a conflict of interest.

ECF DKt. #6, Ex. 18.  On September 10, 2008, the Supreme Court of Ohio dismissed Petitioner's

appeal as not involving any substantial constitutional question.  ECF Dkt. #6, Ex. 19.

**D.      28 U.S.C. § 2254 Petition**

On October 31, 2008, Petitioner filed the instant petition for a writ of habeas corpus.  ECF

Dkt. #1; *see Towns v. U.S.*, 190 F.3d 468, 469 (6th Cir. 1999) citing *Houston v. Lack*, 487 U.S. 266,

270-74 (1988) (a *pro se* prisoner's petition is considered to be filed on the day he delivers it to

prison authorities).  Petitioner set forth the following grounds for relief:

**Ground One:** Petitioners [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I § 10 of the Ohio Constitution were violated when counsel failed to

-5-

move the court to suppress evidence obtained in violation of Petitioners [sic] rights prohibiting warrantless searches guaranteed by the Fourth Amendment to the United States Constitution and Article I Section 14 of the Ohio Constitution.

> **Supporting Facts:** Petitioner was provided constitutionally ineffective assistance of counsel when counsel failed to move the court to suppress evidence obtained during a warrantless search.  Law enforcement illegally viewed video tapes that allegedly belonged to Petitioner without a warrant.

**Ground Two:** The Petitioners [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I Section 10 of the Ohio Constitution were violated when counsel failed to move the court to suppress evidence that was suppressable [sic] due to an illegal search that violated petitioner's rights guaranteed by the Fourth Amendment to the United States Constitution and Article I Section 14 of the Ohio Constitution.

> **Supporting Facts:** Petitioner states than [sic] the victims' [sic] (Petitioner's ex-wife) police report and domestic relation report are suppressable [sic] due to the pieces of evidence being deprived from suppressable [sic] evidence.  The victim clearly stated that she was not aware that a crime had been committed until she viewed the suppressible video tapes set forth in ground one.  Evidence derived from suppressible evidence is also suppressible due to the inability to explain the origin of the evidence.

**Ground Three:** The Petitioners [sic] right to the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I Section 10 of the Ohio Constitution were [sic] violated when counsel failed to properly represent petitioner due to a conflict of interest.

> **Supporting Facts:** Petitioner was not afforded the effective assistance of counsel during his common pleas proceedings as demonstrated by grounds one and two.  Petitioner contends that this failure by counsel was a direct result of a conflict of interest that occurred when counsel represented petitioner and the alleged victims boyfriend at the same time.

ECF Dkt. #1.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

-6-

Further, the Supreme Court has held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity). Since the undersigned believes that Petitioner fails to present a colorable federal claim, the undersigned will not further address the law pertaining to the AEDPA's procedural barriers.

## IV.    STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 26, 2007, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.; see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A. Decisions of lower federal courts may not be considered.

B. Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C. The state court decision may be overturned only if:

   1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

   2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

   3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

-8-

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Bailey v. Mitchell*, 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice."  *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility."  *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d

672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**V.      LAW AND ANALYSIS**

Petitioner raises three habeas corpus claims based upon assertions of ineffective assistance of counsel.  Although Respondent contends that that the instant grounds are procedurally defaulted, the undersigned believes that they are plainly meritless and will therefore proceed to address the merits forthwith. *Granberry v. Greer*, 481 U.S. 129, 135 (1987).

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel.  *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).   Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief.  *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).  Specifically, in a guilty plea context, a petitioner attempting to establish that trial counsel's representation was ineffective must establish prejudice by demonstrating that, but for the Sixth Amendment violation, the petitioner would have

-10-

not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

Therefore, in order to establish that he is entitled to habeas relief on his Fourth Amendment-based claims asserted in Grounds 1 and 2, Petitioner must establish that: (1) trial counsel failed to raise meritorious objections (*i.e.,* the evidence used to persuade him into pleading nolo contendre was suppressible); (2) trial counsel's failure to raise those objections was not attributable to sound trial strategy; and (3) Petitioner would have insisted on proceeding to trial if counsel lodged the suppression objections. Since the viability of Petitioner's ineffective assistance of counsel claims relies upon the merits of the alleged Fourth Amendment violations, the undersigned will address the merits of the underlying Fourth Amendment claims in order to determine if trial counsel's performance was deficient or prejudicial. To establish that he is entitled to relief on his conflict of interest claim asserted in Ground 3, Petitioner must establish that an actual conflict existed and that he would have insisted on proceeding to trial if he had known of the conflict at the time he proffered his plea of nolo contendere.

### A. Merits of Grounds 1 and 2.

Petitioner argues that the evidence obtained by police was suppressible because: (1) the victim, who discovered the videotapes, was bound by the Fourth Amendment; (2) the victim obtained the videotapes through criminal acts; and (3) once law enforcement obtained the videotapes, a search warrant was necessary in order to view the videotapes. The undersigned will address each of Petitioner's arguments separately.

In the context of an allegation of ineffective assistance of counsel based upon a failure to object to Fourth Amendment violations, the Sixth Circuit has held that a claim of ineffective assistance of counsel fails where the underlying Fourth Amendment claim was meritless. *See Brown v. Jamrog*, No. 01-CV-70772-DT, 2001 U.S. Dist. LEXIS 22804, *21-22 (E.D.Mich. October 31, 2001) (holding that petitioner's counsel was ineffective because a suppression motion lacked merit and would have failed if made by counsel); *United States v. Kelley*, No. 89-1837, 1990 U.S. App. LEXIS 19241, at *3-4 (6th Cir. October 30, 1990) (holding that petitioner's counsel was not ineffective because any motion to suppress wiretapped recordings used against petitioner would

have failed); *But cf. Northrop v. Trippett*, 265 F.3d 372, 384-385 (6th Cir. 2001) (holding that petitioner's counsel did prejudice the petitioner by failing to raise a meritorious suppression claim and holding that there was no strategic reason in neglecting to seek suppression). Therefore, the Court should determine if Plaintiff's underlying Fourth Amendment claims have merit.

> **1. Whether the discovery of the videotapes by a private party constitutes a search.**

Petitioner claims that the evidence discovered by the victim in his criminal case and used to persuade him into pleading nolo contendere was suppressible. However, the undersigned recommends that the Court reject this argument because the victim was not a state actor.

The Fourth Amendment to the United States Constitution guarantees the right of an individual "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Art. IV. However, the private party search doctrine states that "[t]he Fourth Amendment does not apply to searches or seizures by private persons." *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995) (citing *United States v. Jacobsen*, 466 U.S. 109, 116-117 (1984)). Rather, the Fourth Amendment applies "only [to] governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official." *King*, 55 F.3d at 1196 (citing *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). The United States Supreme Court stated its position on the Fourth Amendment's applicability to private searche*s in Jacobsen* when it held that:

> The first Clause of the Fourth Amendment provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . This Court has also consistently construed this protection as proscribing only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.

*Jacobsen*, 466 U.S. at 113.

There is no dispute that the victim in this case was a private party and not a government actor. Nothing in the record indicates that the victim worked in conjunction or in concert with law enforcement when discovering and viewing the videotapes. While the videotapes eventually

-12-

reached law enforcement, they were turned over by the victim's attorney and his staff. Further, the evidence was turned over to law enforcement as a result of the victim's attorney seeking law enforcement's involvement – not law enforcement seeking the evidence from the private party. As a result, the victim was a private citizen, and because no government actor was involved in the seizure of the tapes, Petitioner's argument to the contrary should fail.

For the foregoing reasons, the undersigned recommends that the Court find that no Fourth Amendment violation occurred in the victim's seizure of the videotapes, and counsel acted reasonably in choosing not to object to this seizure. Likewise, because no constitutional violation occurred, Petitioner has failed to establish prejudice. Accordingly, the undersigned recommends that the Court DISMISS Grounds 1 and 2 insofar as they rely on private party search and seizure.

## 2. Criminal acts allegedly committed by the victim

Plaintiff also argues that the victim allegedly obtained the videotapes through trespass and burglary, making the videotapes illegally seized and subject to suppression. However, the Sixth Circuit has rejected this argument, stating that "the Fourth Amendment was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies. Thus, [a private citizen's] inspection tour and photographing of items in plaintiff's home, by itself, while perhaps constituting a trespass, does not offend the Fourth Amendment." *Bills v. Aseltine*, 958 F.2d 697, 704 (6th Cir. 1992)(citing *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921); *see also United States v. Malbrough*, 922 F.2d 458, 461-462 (1990) (citing *Jacobsen*, 466 U.S. 109, 115) ("trespassing by a private citizen does not constitute a search or seizure within the context of the Fourth Amendment unless the informant is an agent or instrument of the government.").

Second, Petitioner cannot claim that the victim was an agent or instrument of the government. For a private citizen to be an agent or instrument of the government, "the police must have instigated, encouraged or participated in the search" and "the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *Lambert*, 771 F.2d 83, 89. Petitioner does not claim that law enforcement ever provoked or initiated any contact with the victim in order to compel her to seek out the videotapes. Moreover, Petitioner does not claim

that the victim sought out the videotapes with the intention of conducting a search for law enforcement, or with the intent of finding evidence to submit to law enforcement.  While the victim did turn the videotapes over to law enforcement through her attorney, this disclosure was the extent of her interaction with law enforcement.  Since the victim acted under her own volition, the victim was not an agent or instrument of the government.

For the foregoing reasons, the undersigned recommends that the Court find that no Fourth Amendment violation occurred during the victim's alleged trespass, and that counsel acted reasonably in choosing not to object to the subsequent seizure of the videotapes.  Likewise, because no constitutional violation occurred, Petitioner has failed to establish prejudice.  Accordingly, the undersigned recommends that the Court DISMISS Grounds 1 and 2 insofar as they rely on allegations that evidence should have been suppressed as obtained illegally through trespass.

### 3. Whether the viewing of the videotapes by law enforcement constitutes a search.

Petitioner claims that law enforcement's viewing of the videotapes obtained from the victim constituted a search and went beyond the scope of the search discussed above.  ECF Dkt. #10 at 20. However, the undersigned recommends that the Court reject this argument because the victim viewed the tapes in their entirety prior to producing them to police officers and consequently, the police did not conduct a "search" within the meaning of the Fourth Amendment.

The Sixth Circuit explained in *United States v. King* that "[o]nce a private search is conducted, the government's subsequent use of the information obtained in the private search does not implicate the Fourth Amendment as long as the government's use does not exceed the scope of the private search."  55 F.3d at 1196 (citing *Jacobsen*, 466 U.S. at 116-117).  As explained by *United States v. Richards*, 301 Fed. Appx. 480, 2008 WL 4935965  (6th Cir. Nov. 18, 2008), **"the government may not exceed the scope of the private search unless it has an independent right to search."** *Id.* at 483 (citing *United States v. Williams*, 354 F.3d 497, 509 (6th Cir. 2003)).  However, the Sixth Circuit explicitly qualified that the government does not always need an independent right to search, as "the government's confirmation of prior knowledge learned by the private individuals does not constitute exceeding the scope of a private search."  *Richards*, 301 Fed. Appx. at 483; *see*

-14-

*also Walter v. United States*, 447 U.S. 649, 657 (1998).  Law enforcement "[does] not exceed the scope of the private search, however, if they merely look at the same materials examined by the private parties." *Id.*  In other words, "[o]nce frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now nonprivate information." *Jacobsen*, 466 U.S. at 117.

The case *sub judice* is distinguishable from *Walter v. United States*, where employees of a private company mistakenly received videotapes of suggestive material.  447 U.S. at 651-52.  After unsuccessfully attempting to view the contents of the videotapes, the private individuals turned the videotapes over to FBI agents.  *Id.*  Once in possession of the films, the FBI agents viewed the videotapes, which resulted in the petitioner being charged with multiple counts of violations of obscenity statutes.  *Id.* at 652.  The United States Supreme Court held that the FBI had violated the Fourth Amendment by viewing the films, reasoning:

> In these cases, the private party had not actually viewed the films. Prior to the Government screening one could only draw inferences about what was on the films. The projection of the films was a significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search. That separate search was not supported by any exigency, or by a warrant even though one could have easily been obtained.

*Id.* at 657.  Unlike the governmental search that occurred in *Walters*, the  police in the case at bar viewed videos only after a private party had viewed them in their entirety.  *See* ECF Dkt. #6, Ex. 10, Subex.  B ("The victim stated that she watched the tapes from start to finish.").  Accordingly, the government did not expand the search that had occurred by a private citizen, and *Walter* would not likely apply to result in suppression of the seized evidence in the case at bar.

The case  at bar is analogous to *United States v. King* and *United States v. Richards*.  In *King*, the defendant possessed documents in his home detailing how to commit bank fraud.  *King*, 55 F.3d at 1195.  The wife of the defendant contacted a private individual regarding the documents and asked him to remove the documents from the home and destroy them.  *Id.*  However, instead of destroying the documents, the private individual contacted authorities regarding the criminal relevancy of the documents to a case against the defendant.  *Id.*  Upon receipt of the documents from the private individual, authorities filed an information charging the defendant with bank fraud.  *Id.*

-15-

The court held that the use of the documents against the defendant in a criminal prosecution was permissible, so long as the use and search by authorities did not exceed that of the private individual. *Id.* at 1196.

In *Richards*, the Sixth Circuit reached a similar result where a governmental search did not exceed the scope of a private search.  The defendant  in *Richards* leased a storage unit and the lease gave the owner of the storage units the right to enter the unit under a number of circumstances, including upon noticing a broken lock.  301 Fed. Appx. at 481.  An employee of the storage unit facility noticed that the lock to the defendant's unit was cut and entered to inspect whether the defendant's property was damaged.  *Id.*  Upon entering, the employee opened one of the defendant's suitcases stored in the unit and discovered child pornography.  *Id.*  The police were notified and eventually obtained a search warrant in order to conduct a search of the rest of the storage unit.  *Id.* The Sixth Circuit held that since law enforcement did not expand upon the employee's private search of the discovered child pornography, and only confirmed what the private employee had already found, the discovery of incriminating evidence was permissible.  *Id.* at 483.

Unlike *Walter*, but like *King* and *Richards*, the private party here had already viewed the videotapes before producing them to authorities through the private party's attorney.  *See* ECF Dkt. #6, Ex. 10, Subex.  B ("The victim stated that she watched the tapes from start to finish.").  Unlike *Walter* where a private citizen had not viewed any of the film and "Prior to the Government screening *one could only draw inferences about what was on the films*" the private citizen in this case observed at least a portion of the videos at issue and was able to identify her own body and Petitioner's criminal acts.  *See* ECF Dkt. #6, Ex. 10, Subex.  B.  Petitioner claims that the incriminating nature of the videos was not immediately apparent. ECF Dkt. #10 at 17.  Regardless of whether the incriminating nature of the videos was immediate apparent, no Fourth Amendment violation occurred absent government action.  Therefore, no inferences were necessary.

Therefore, Petitioner's claim that the videotapes are suppressible should fail.   The undersigned recommends that the Court find that no Fourth Amendment violation occurred when police viewed the videotapes without a warrant, and that counsel acted reasonably in choosing not to object to this seizure.  Likewise, because no constitutional violation occurred, Petitioner has failed

-16-

to establish prejudice.  Accordingly, the undersigned recommends that the Court DISMISS Grounds 1 and 2 insofar as they contend that police required a search warrant to view the videotapes at issue.

### 4. Police statement and domestic relations documents

Petitioner also argues that the police statement and domestic relations documents were suppressible as evidence because they originated from the videotapes that Petitioner contends were obtained illegally.  However, given the undersigned's previous recommendation that the videotape evidence itself was not suppressible, the Court need not consider the admissibility of the subsequent documents created from the admissible evidence.  *See Wong Sun v. U.S.*, 371 U.S. 471, 484 ("The exclusionary prohibition extends as well to the indirect as the direct products of [Fourth Amendment violations].").  As such, any further discussion regarding the merits of the suppressibility of the documents is unnecessary given that the videotapes were not suppressible.  The undersigned recommends that the Court find that no Fourth Amendment violation occurred related to the police statement and domestic relations documents, and that counsel acted reasonably in choosing not to object to this seizure.  Likewise, because no constitutional violation occurred, Petitioner has failed to establish prejudice.  Accordingly, the undersigned recommends that the Court DISMISS Grounds 1 and 2 insofar as they contend that counsel failed to seek suppression of police statements and domestic relations documents.

### 5.       Summary and Recommendation Pertaining to Grounds 1 and 2

Since the undersigned recommends that the Court find that it is clear that no Fourth Amendment violations occurred in the instant case, the Court should further find that counsel acted reasonably in choosing not to seek suppression.  Likewise, because no constitutional violations occurred, Petitioner has failed to establish prejudice.  Accordingly, the undersigned recommends that the Court DISMISS Grounds 1 and 2 in their entirety with prejudice.

### B.       Merits of Ground 3

Next, Petitioner claims that trial counsel represented the victim's boyfriend at the same time that he represented Petitioner, resulting in a conflict of interest and depriving Petitioner of effective assistance of counsel.

-17-

In the "conflict of interest" context, the *Strickland* prejudice standard is modified to allow a presumption of prejudice on a showing of an actual and significant. *Strickland*, 466 U.S. at 692. An actual conflict of interest is a conflict that adversely affects counsel's performance. *Id.* (citing *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). Absent an objection, prejudice against the effective assistance of counsel "is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. However, "[p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-350 (1980)); *see also Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005). Though "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350. However, a court need not always inquire into a potential conflict of interest.[1] *see generally Mickens*, 535 U.S. at 168-169 (2002).

The Sixth Circuit has further stated that "a petitioner is required to establish a connection between an [sic] conflict and his attorney's ineffective assistance." *Charette v. Bell*, 106 Fed. Appx. 327, 331, 2004 WL 1745780 (6th Cir. 2004). "The existence of a conflict, on the one hand, and an allegation of ineffective assistance on the other, without more, are insufficient." *Id.*; *see also Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005) ("[a] possibility of conflict is insufficient to establish a violation of the petitioner's Sixth Amendment rights, and no violation occurs where the conflict is irrelevant or merely hypothetical."). One "is required to show how the conflict actually impaired his defense before this court is obligated to find prejudice." *Charette*, 106 Fed. Appx. at 331. Further, a court "will not find an actual conflict unless [a petitioner] can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.'" *Thomas v.*

---

[1] While *Sullivan* addressed a court's duty to inquire whether a conflict of interest exists, the United States Supreme Court "addressed separately a trial court's duty to inquire into the propriety of a multiple representation, construing *Holloway*, 435 U.S. 475 (1978), to require inquiry only when the trial court knows or reasonably should know that a particular conflict exists." *Mickens v. Taylor*, 535 U.S. 162, 168-169 (2002) (citing *Sullivan*, 446 U.S. at 347) (internal quotation and citation omitted). Alternatively, a reasonably known conflict "is not to be confused with [the situation that arises] when the trial court is aware of a vague, unspecified possibility of conflict . . . ." *Id.* In the present case, Petitioner fails to present anything in his reply to respondent's return of writ (ECF Dkt. # 10) that indicates that the trial court had any knowledge of a conflict of interest that would give rise to a duty to inquire of a potential conflict.

-18-

*Foltz*, 818 F.2d 476, 481 (6th Cir. 1987), quoting *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.), *cert. denied*, 464 U.S. 991, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983).  Therefore, "[a]bsent the identification of "an actual lapse in representation, traceable to the alleged conflict," a claim for ineffective assistance of counsel due to a conflict interest fails. *Id.* (citing *Cuyler*, 446 U.S. at 349).

Furthermore, a court addressing a petitioner's claim of ineffective assistance of counsel need not "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. 697.  "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Id.*

The undersigned recommends that the Court address the prejudice prong first and find that Petitioner fails to establish that Mr. Donahue prejudiced his case because he fails to demonstrate that he was unaware that Mr. Donahue represented the victim's boyfriend.  Since Petitioner fails to establish that he did not know of Mr. Donahue's representation of the victim's boyfriend before or during his criminal proceedings, Petitioner fails to establish prejudice.  If Petitioner was aware that counsel represented him and proceeded to enter a plea of nolo contendere, then he did so knowingly and voluntarily – as he admitted on the record –  and counsel's conflict did not affect his performance.  The record indicates that Petitioner entered his no contest plea knowingly and voluntarily, absent of any threat of coercion or promises.  ECF Dkt. # 6, Ex. 1 at 6-7, 62.  Further, Petitioner failed to object to the adequacy of his representation when making his plea agreement with the State.

For the foregoing reasons, the undersigned reasons that Petitioner fails to establish that counsel's representation of the victim's boyfriend resulted in a prejudicial conflict of interest in his criminal proceedings.  The undersigned therefore recommends that the Court DISMISS Ground 3 in its entirety with prejudice.

**VI.    CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE:  August 13, 2009                               */s/George J. Limbert*
                                                     GEORGE J. LIMBERT
                                                     UNITED STATES MAGISTRATE JUDGE



ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).